LOGAN, et al. *v.* THE CALIFORNIA COMPANY, et al.

No. 40551          November 11, 1957          97 So. 2d 924

*Morse & Morse,* Gulfport, for appellant.

*Wells, Thomas & Wells,* Jackson, for appellee, The California Company.

840

*Laub, Adams, Forman & Truly*, Natchez, for appellees, J-O Oil Company, et al.

ROBERDS, P. J.

The problem involved in this litigation is the determination of the meaning of an oil, gas and mineral lease as affected by a special rider attached thereto.

The lease was executed August 25, 1943, between Mrs. Kate S. Logan, as lessor, and The California Company, a corporation, as lessee. Appellants, three in number, acquired their interest in the lease as beneficiaries under the will of Mrs. Logan, their mother, who departed this life, testate, March 27, 1952. The other parties hereto, being some sixty to seventy in number, and who are appellees on this appeal, have an interest in the property which will be affected by the construction which may be placed upon said oil, gas and mineral lease.

The rider, attached to the lease, reads: "Regardless of anything in this lease to the contrary, and particularly regardless of paragraph 7 of this lease, while the rights of lessor and lessee herein may be assigned in whole or in part, yet, nevertheless, in the event the annual rental is not paid on all of said lands, whether by the original lessee herein or his assignee or assignees, the portion

of said land retained on which said rentals are to be paid by the original lessee or assigns shall not be less than 627½ acres, same to be in a solid body and lying along one side or the other or the north or the south part of said tract." The lease covered 1,255 acres of land. Section 2 thereof provided that, subject to the other provisions of the lease, it shall remain in force for a term of ten years, called the primary term, and as long thereafter as oil, gas or other mineral, or either of them, is being produced from said land, or "any operations are being conducted hereunder on said land, whether such production or such operations be concurrent or successive."

Section 4 contains the usual provision that if drilling or mining operations are not commenced on said land within the terms of the lease, on or before twelve months from the date of the lease, it will terminate unless on or before the expiration of the twelve-month period lessee tenders or pays lessor one dollar per acre as rentals, which payment, if made, shall extend and renew the lease for another twelve months.

Section 7 of the lease provides that either lessor or lessee may assign and transfer their rights "in whole or in part". Rental payments may be anticipated by lessee and may be made before the due date thereof. The manner of giving lessee effective notice of change of ownership, whether there be one or more lessors, is then set out. It then deals with the rights and duties as to offset wells and vests in lessee the right to develop and operate the lease as a single tract regardless of a change of interest or ownership under the lease.

Section 3 stipulates the amount of royalties to be paid by lessee of oil, gas, sulphur or other minerals which may be produced on the leased premises.

Delay rentals were paid Mrs. Logan, the lessor, to August 25, 1947. Since that time, and to June 29, 1955, the date of the filing of the original bill herein by appellants, operations of the type and character required by the

terms of the lease to keep it alive, have been conducted upon the leased premises. Indeed Mrs. Logan, during her lifetime, was paid royalties from production on the acreage, and the three appellants, when this suit was tried, had been paid in royalties a total sum of $3,391.42, covering the period from September 28, 1950, to September 19, 1956.

■■■ But appellants, in their bill, say that the lease has expired because lessee has not made the renewal annual rental payments. In other words, they say that the terms of the lease, especially the rider, require annual rental payments to be made to keep the lease alive even though production is being had upon the leased premises. On the other hand, defendants below and appellees here, contend that the rider means (1) that if the lease is renewed by payment of rentals the acreage renewed must be as much as 627½ acres—not less than that acreage— and (2) that the block of at least 627½ acreage must be in a solid body; and (3) lie on one side or the other "or on the north or south part of said tract" of 1,255 acres.

It is clear to us that the interpretation of lessees is correct. In the first place, the rider provision is based upon the assumption that the lease may be extended by payment of annual rentals. The statement "in event that the annual rental is not paid on all of said land" assumes the lease may be renewed by payment of annual rentals, and also that this might be done as to a part of the land covered by the lease. But the rider requires rentals to be paid upon at least 627½ acres of the total tract if the rent renewal method is adopted to keep the lease alive. In such case Mrs. Logan wanted to receive at least $627.50 per year—not some smaller amount as might have been the case without the rider. However, it was not her intention by this rider to eliminate from the lease all right to a renewal thereof by production, or operations, upon the leased premises. The rider does not establish the rent renewal method as the only way

in which the lease may be renewed. Mrs. Logan wanted an annual income. That desire would be met either by rental renewal or payment of royalties.

Another limitation imposed by the rider was the lands ''retained on which rentals are to be paid'' must be in a solid body. She did not want the retained land to be composed of separate parcels of varying acreage located here and there on the tract of 1,255 acres. All of the retained land must be in one body.

And the third restriction was that the solid body of land so retained must lie on one side or the other of the entire tract—not a part on one side and a part on the other side of the tract.

■■ The foregoing was, in effect, the construction placed upon the terms of the lease by the chancellor. We think the lease is not ambiguous and that, therefore, the chancellor also correctly excluded the proffered oral testimony to vary, or interpret, its terms.

Defendants below, appellees here, also asserted that complainants, appellants here, by their conduct, had ratified the lease and also were estopped to contend it had expired. In view of the construction we have placed upon the lease, it is not necessary for us to deal with, or decide, these contentions.

Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.